IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


TRACY COLLIER,

       Petitioner,

v.                                      CASE NO. 5:06-cv-187-RS-AK

JAMES MCDONOUGH,

       Respondent.

_____/

## REPORT AND RECOMMENDATION


      This cause is before the Court on Petitioner's petition for a writ of habeas corpus.  Doc.

1.  Petitioner has paid the filing fee.  Respondent has filed a response and exhibits, Docs. 20 &

21, and Petitioner has filed a reply.  Doc. 31.  This cause is therefore in a posture for decision.[1]

Having carefully considered the matter, the Court recommends that the petition be denied.

_____

     [1]As the Court began its review of this matter, it noted that Pam Smoak, Judge Richard Smoak's late wife, had been involved in the underlying state court proceedings as an assistant state attorney, beginning with the signing of the charging document.  *See*, *e.g*., Doc. 20, Ex. A & Ex. U.  That information was passed along to a member of Judge Smoak's staff, but it was determined that it would be a better use of judicial resources simply to note the instances in which Ms. Smoak personally participated in the proceedings until such time as Judge Smoak could review the state court record, which is not available to him on the computer since it is filed only in hard copy, and determine whether he should continue to handle this case.  In any event, Ms. Smoak's appearance in the state court proceedings has no impact on the undersigned's continued assignment to this case.

## BACKGROUND

Petitioner was convicted by a jury of lewd and lascivious battery on a child less than 16 years of age.[2]  Doc. 20, Ex. A.  More specifically, Petitioner was convicted of having sexual intercourse with J.M., who was 15 years old at the time.  The incident was reported to the police after J.M.'s mother found a letter she had written to Petitioner.  Petitioner was sentenced to 15 years imprisonment as a prison releasee reoffender.  Doc. 20, Ex. C.

Petitioner appealed, raising four issues: (1) whether Petitioner's due process rights were violated by an insufficient record for appellate review, (2) whether the trial court erred by allowing the victim's medical records into evidence after finding the State had committed a discovery violation, (3) whether the court erred by failing to remain neutral and impartial in violation of Petitioner's due process rights with regard to the introduction of the medical records, and (4) whether the court erred by allowing the medical records into evidence as they were highly prejudicial and without probative value.  Doc. 20, Ex. D.  The appellate court affirmed per curiam without written opinion.  Doc. 20, Ex. F.

Petitioner then filed a Rule 3.850 motion for post-conviction relief, in which he raised the following claims:

(1)  newly discovered evidence existed in the form of a recantation from J.M.;

(2)  counsel failed to investigate and interview witnesses who were with Petitioner on the day at issue;

---

[2]As noted *supra* n.1, Ms. Smoak signed the charging document initiating Petitioner's prosecution.  Doc. 20, Ex. A.  It also appears that she participated in the first jury selection and later filed the motion for continuance after a witness could not be located.  *Id*.  Ms. Smoak did not participate in the second jury selection and did not try the case.  *Id*.

(3)  counsel failed to investigate the lack of medical evidence of sexual activity and to obtain the medical report;

(4)  counsel failed to raise the denial of counsel at a critical stage of the proceedings;

(5)  the court erred in failing to conduct an adequate inquiry into Petitioner's decision to represent himself;

(6)  the court erred in conducting an ex parte hearing in Petitioner's absence in violation of his due process rights;

(7)  the court failed to renew the offer of counsel as required by state court rules;

(8)  the court erred by failing to remain neutral and impartial;

(9)  counsel failed to file pretrial and post-trial motions;

(10) counsel failed to secure a full appellate record by allowing the court to conduct pretrial and post-trial hearings without transcription;

(11) counsel failed to seek a new trial after J.M. recanted her testimony;

(12) the prosecutor failed to disclose J.M.'s medical report before trial in violation of *Brady*.

Doc. 20, Ex. H.  He later filed a supplemental motion, raising the following additional claims:

(1)  the court erred in not renewing the offer of counsel during pretrial and post-trial motions in violation of Petitioner's constitutional rights;

(2)  counsel was ineffective for allowing the State to misinform the court regarding the existence of a medical examination.

Doc. 20, Ex. I.

The court initially denied all of Petitioner's claims except the first, which it set for

evidentiary hearing.  Doc. 20, Ex. J.  More specifically, the court rejected Petitioner's claims of

ineffectiveness regarding counsel's failure to investigate and interview witnesses, to investigate

the lack of medical evidence of sexual activity, to obtain the medical records, and to assist at the

pre-trial hearing, finding that Petitioner chose to dismiss counsel and to represent himself with the public defender acting as stand-by counsel, not co-counsel.  Petitioner filed the pretrial motions himself, and he could have performed all of the tasks which he complained counsel failed to do.  In short, the court found that counsel was "not ineffective for failing to do that which Counsel was dismissed by [Petitioner] from doing."  *Id.*  As to the court's alleged errors, the court found that although the allegations could or should have been raised on direct appeal, they were nevertheless without merit.  In particular, the court found that the record "reflects that the Court conducted a full inquiry into [Petitioner's] capacity to represent himself on several occasions," that it had "previously dealt with [Petitioner's] allegation of ex part contact with a witness and failing to be impartial," and that it had "inquired as to whether [Petitioner] wanted to continue representing himself prior to jury selection."  *Id.*

The court again rejected Petitioner's claim regarding counsel's failure to file pretrial and post-trial motions, reiterating that counsel was not ineffective "for failing to do that which Counsel was dismissed by Defendant from doing," and finding that Petitioner "could have filed any motion he thought necessary."  *Id.*  Regarding counsel's failure to secure a full record for appeal, the court found that the claim was procedurally barred as it was raised and rejected on appeal.  *Id.*  As to counsel's failure to seek a new trial based on J.M.'s recantation, the court again noted its prior conclusion regarding Petitioner's dismissal of counsel and found that because the recantation was in Petitioner's possession, he "could have filed any motion he thought necessary."  *Id.*  The court found the allegation of prosecutorial misconduct regarding the victim's medical report to be procedurally barred since it was raised and rejected on appeal.  *Id.*

As to the issues raised in the supplemental motion, the court found that the allegation

regarding the court's failure to renew its offer of counsel after trial could or should have been

raised on direct appeal and that Petitioner had no constitutional right to counsel "in mounting

collateral attacks on convictions."  Finally, the court found that the issue of counsel's

ineffectiveness regarding counsel allowing the State to misinform the court and Petitioner

regarding the existence of a medical exam was procedurally barred, as it was raised and rejected

on direct appeal.  *Id*.

The court then held a hearing on the issue of J.M.'s recantation and thereafter, issued an

amended order denying all claims for relief.  It reaffirmed its prior rulings and, with regard to the

recantation claim, found:

> [T]his Court heard testimony of Joanna McClellan, the complaining witness at the
> defendant's trial; McClellan, now twenty years old, testified that the letter that
> supposedly was a recantation of her trial testimony was not truthful, but was
> written based upon either misleading or threatening behavior by a third party.
> Based upon McClellan's testimony, this court cannot find that the testimony is in
> fact "newly discovered evidence," or that it undermines confidence in the
> outcome of defendant's trial several years ago.  As such, the claim in ground 1 of
> the defendant's motion is denied.

Doc. 20, Ex. L.

Petitioner appealed the ruling, which was affirmed without written opinion.  *Collier v.

State*, 935 So.2d 502 (Fla. Dist. Ct. App. 2006).

The instant petition ensued.  On this occasion, Petitioner raises the following claims:[3]

---

[3]By prior order, the Court allowed Petitioner to withdraw Grounds 6, 7, and 8.  Doc. 9.
Therefore, those claims, which appear to relate to a separate habeas proceeding now pending
before another magistrate judge, will not be considered here.

(1) that the trial court violated his right to due process when it failed to remain neutral and impartial;

(2) that Petitioner's due process rights were violated by an "insufficient record [for] appellate review";

(3) that the court erred by allowing J.M's medical records into evidence when they were highly prejudicial and had no probative value;

(4) that Petitioner's right to fundamental fairness was violated by the admitting the medical records after the court found a violation of discovery; and

(5) that, based on the grounds raised on post-conviction, the denial of post-conviction relief was contrary to clearly established law.

Doc. 1. Each will be considered in turn.

## DISCUSSION

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*,

529 U.S. at 405.  A state-court decision will also be contrary to clearly established Supreme

Court precedent "if the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the

Court's] precedent."  *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from [Supreme

Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.

at 413.  The federal court considering a habeas petition "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative

of clearly established federal law.  Instead, this Court must look to the specific holdings of

Supreme Court cases themselves.  If the Supreme Court has not issued a specific holding on the

issue at hand, then the state court's decision is not contrary to or an unreasonable application of

clearly established federal law.  *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166

L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the

state court's factual determinations are correct, and the petitioner bears the burden of rebutting

the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see

also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's

rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1) & (c)). To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. at 845. In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*).

Claims which have not been fairly presented to the state court but are defaulted from

state court review are considered technically exhausted because no remedies are available for

purposes of § 2254(c).  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  *See also White v.*

*State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on

post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman*, 501 U.S. at 750.

    1.    Violation of due process rights when court failed to remain neutral and
impartial.

In this claim, Petitioner alleges that the trial court violated his right to due process

by failing to remain neutral and impartial when it (1) allowed the State to withhold *Brady*

material, (2)  "held an ex parte hearing with a witness, telling the witness not to inform

the Petitioner," and (3) "discussed [in the hearing] his fixed opinion of Petitioner and the

case."  Doc. 1.  Without dispute, Petitioner raised the first two issues in his post-

conviction motion under "Claim Four."  *See* Doc. 20, Ex. H.  Thus, this Court is

constrained only to determine whether the state court adjudication resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established

Supreme Court law or that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding.

As to Petitioner's claim that the court stepped outside the bounds of neutrality and

detachment when it allowed the State to withhold *Brady* material, the Court assumes that

Petitioner is alluding to the court's admission into evidence of the victim's medical report. This claim is without merit. To establish a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), a petitioner must show that the prosecution suppressed evidence, that the suppressed evidence was favorable to the defense or was exculpatory, and that the suppressed evidence was material. *United States v. Starrett*, 55 F.3d 1525, 1555 (11th Cir. 1995). "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*.

While there may have been a violation of state court discovery rules, there was no violation of *Brady*, as the medical report, while tardily supplied to Petitioner, was not suppressed by the State but was introduced at trial. Any *Brady* claim therefore falls on the first element.

Furthermore, Petitioner has not shown that this evidentiary ruling amounted to improper bias or partiality. "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." *In re Murchison*, 349 U.S. 133, 136 (1955). The requirement of neutrality has been "jealously guarded" by the Supreme Court. *Marshall v. Jerrico, Inc*. 446 U.S. 238, 243 (1980). Judicial rulings alone almost never constitute a valid basis for showing improper partiality or bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Perfection is not exacted by the Constitution, nor can infallibility be expected...of judges...." *Dunn v. Sears, Roebuck & Co*., 639 F.2d 1171, 1176 (5th Cir. 1981). Furthermore, opinions

formed by the judge on the basis of facts introduced or events occurring during the

course of the proceedings do not evidence bias or partiality "unless they display a deep-

seated favoritism or antagonism that would make a fair judgment impossible." *Liteky*,

510 U.S. at 555.  Thus, a judge's criticism, disapproval, or hostility towards a party or his

counsel will not support a claim of actual bias.  *Id.*  Generally, "most questions

concerning a judge's qualifications to hear a case are not constitutional ones," but

instead, are "answered by common law, statute, or the professional standards of the

bench and bar."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

As these cases suggest, Petitioner must show more than an adverse ruling to

establish the type of "deep-seated favoritism or antagonism" necessary to establish a

violation of due process.  He has not done that, and the Court's own reading of the record

does not lend credence to the claim.  Therefore, the claim is without merit, and the state

court ruling was neither contrary to nor an unreasonable application of Supreme Court

precedent.

According to the state court record, Petitioner brought the issue of the ex parte

communication to the court's attention at the sentencing hearing.[4]  At that time, the state

court judge explained that when the witness, a law enforcement officer, approached him

after trial regarding his testimony, he "advised the officer to talk to the State Attorney

involved and advised him that the Court could not carry on a conversation with the

defendant or with that witness in any detail."  Doc. 20, Ex. K.  Petitioner does not have

---

[4]The exhibits submitted by Respondent are somewhat mixed up, and the pertinent
sentencing hearing is attached to the end of Ex. K of the Court's documents, not Ex. Q.

any evidence to suggest that the court's recollection of this conversation was faulty or that the conversation was more extensive than the court stated.[5]  Therefore, the state court's determination in the post-conviction proceeding that it had already dealt with the issue and found it without merit is likewise entitled to deference.

As to Petitioner's claim that the court improperly "discussed his fixed opinion of Petitioner and the case" during this ex parte encounter, which Petitioner erroneously classifies as a "hearing," the claim is also without merit.  An ex parte communication between a judge and a witness is not *per se* unconstitutional, *United States v. Adams*, 785 F.2d 917, 920 (11th Cir. 1986), and as there is no evidence, only speculation, that the court's discussion with the officer exceeded the matters stated by the court at sentencing, the conference did not violate Petitioner's due process rights.  Thus, the state court's ruling is neither contrary to nor an unreasonable application of Supreme Court precedent, and it was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

2.     Violation of due process by "insufficient record [for] appellate review."

This claim, arguing that there was a "window of two minutes" missing from the trial transcript,[6] was raised and rejected on direct appeal and has therefore been

_____

[5]Indeed, when Petitioner questioned the officer in a different proceeding on a different charge, he was unable to cast doubt on the court's recollection.

[6]In his reply, Petitioner alleges other instances of an incomplete record, by, for example, the lack of a transcription of the ex parte "hearing" with the officer.  Any claim beyond the "two minute" claim was not properly exhausted, and though technically exhausted, it is barred because Petitioner has not shown cause and prejudice for the failure to raise the additional issues related to the state of the record in state court or a miscarriage of justice.

exhausted.  Consequently, the court's rejection is entitled to deference unless it was contrary to or an unreasonable application of Supreme Court law or it involved an unreasonable determination of the fact in light of the evidence presented.   Having carefully considered the matter, the Court finds the state court's ruling is entitled to deference.  Apparently, this "two minute" lapse occurred during a sidebar in which the court, counsel for the State, and Petitioner apparently discussed the State's next witness, the "Miss Brown" mentioned *supra*, who was called shortly before the lunch break. While the record supports an inference that during this sidebar Petitioner reasserted an objection to her as a witness, *see infra*, his objections to her testimony were subsequently considered on the record and rejected.  Because Petitioner has no clear and convincing evidence to place the court's factual determinations otherwise in question, further discussion is not warranted.

3.     Violation of due process by admission of J.M's medical records.

In February, 2001, several weeks before the original March trial date, Petitioner appeared before the court and complained about the public defender, specifically claiming that he had asked for the victim's medical report but had not received it.  In response, counsel for the State, Ms. Smoak,[7]  unequivocally stated: "There isn't a doctor's report.  So [the public defender] couldn't have got something that doesn't exist." Doc. 20, Ex. U at 35.  The court accepted Ms. Smoak's representation, as did Petitioner. *Id*.  Apparently, the public defender had taken the victim's deposition by that time, and

---

[7]Because the issue of the medical records is extensive, Ms. Smoak's participation in the proceedings will be explicitly referenced in the body of this R&R and not just by footnote.

during the course of the deposition, J.M. had revealed that she had at some point after the

alleged contact between her and Petitioner been examined by a doctor.

On March 19, 2001, the day that the original jury was selected, *see* Doc. 20, Ex.

A, Petitioner filed a "Demand for Full Discovery," complaining that pages were missing

from his copy of the victim's deposition and requesting "any information about the

physical exam taken [of J.M.], as well as the doctor's name who completed the

examination." *Id.* Two days later, the day before testimony was to commence, the court

held a hearing on Petitioner's motion. Doc. 20, Ex. W. At that time, Ms. Smoak advised

Petitioner that she had rechecked the deposition pages and that he was "not missing

anything," as the pages were "apparently...misnumbered." *Id.* After further review,

however, she later agreed that Petitioner was correct regarding the missing pages. *Id.*

Other matters were discussed and ruled upon during this hearing, including the issue of

the letter which led to the filing of the information, *see id.* at 4-12, but there was no

further indication that any medical records documenting J.M.'s visit to the doctor existed.

When the matter finally came to trial, a different prosecutor appeared for the State

and advised the court that he intended to call "a Miss Brown from Gulf Coast Medical

Center, Gulf Coast Hospital...Brenda Brown who the State has determined is the

custodian of records at Gulf Coast who will be here only to testify as to the authenticity

of the documents to be presented." Doc. 20, Ex. O at 13. He did not identify the

"documents to be presented." Petitioner objected that he had not "been made aware of

any Miss Brown...I haven't been told anything about her testimony, anything until today,

and I would object to that." *Id.* The court dismissed Petitioner's objections, stating that

"all of those witnesses have been disclosed...you previously were represented by the

Public Defender's Office and you stepped into the case in terms of preparation and

everything so we are ready to go to trial...."  *Id*. at 13-14.

The victim and her cousin then testified, and the victim unequivocally stated that

she and Petitioner had sex on the day in question.[8]  While Petitioner did a thorough job

cross-examining both girls, for example, by putting in question the relevant time frames

and by showing that the encounter was consensual and that J.M. had on-going conflicts

with her mother, he was unable to shake J.M.'s testimony regarding her sexual contact

with him.

Immediately before lunch, the State called Brenda Brown to authenticate records

from Gulf Coast Medical Center of the victim's August 10, 2000, emergency room visit.

*Id*. at 119.  She did not testify about the contents of the records.  When the State moved

to introduce the records, the court "reserve[d] ruling on that at this time."  *Id*.  On cross-

examination, however, Petitioner immediately began questioning Ms. Brown about the

contents of the records, and she answered his questions.  The court then excused the jury

for lunch and stated:

> You questioned the medical records?  The State indicated that they had
> mailed a copy of the records to you.  You also had the opportunity to
> review the medical records at this time and a copy apparently the State has
> also sent to the Public Defender's Office, but the Court will allow it to
> come in as State's Exhibit in evidence, number 2.

*Id*. at 121-22.  The records indicated that J.M. had advised medical personnel that she had

---

[8]It is clear from J.M's testimony that Ms. Smoak was the person who prepared J.M. for
trial.  *See* Doc. 20, Ex. O at 60 & 64-65.

engaged in consensual sex with a 34-year-old man.  There were also several references to

"statutory rape" in the notations.  Nevertheless, Petitioner later used the medical report as

the basis of his motion to dismiss, arguing that the rape kit performed on J.M. was

"inconclusive and showed that nothing occurred."  *Id*. at 150.  Then, in closing

arguments, he again referred to the medical records to argue that there was no evidence

of penetration and advised the jury that it would "get a chance to review them."  *Id*. at

205-206 & 213.

     While Petitioner raised the issue of the admission of the medical records on

appeal, he argued only that they were improperly admitted under state law, not that their

admission violated the United States Constitution.  This claim was therefore not properly

exhausted, and though technically exhausted because Petitioner may not now return to

state court to exhaust the claim, he has not shown either cause and prejudice for the

failure to exhaust or that a fundamental miscarriage of justice will result from this

Court's refusal to hear the claim.  "As a general rule, a federal court in a habeas corpus

case will not review the trial court's actions concerning the admissibility of evidence,"

*Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994), since the state court "has wide

discretion in determining whether to admit evidence at trial, and may exclude material

evidence when there is a compelling reason to do so."  *Lynd v. Terry*, 470 F.3d 1308,

1314 (11th Cir. 2006); *see also Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1985)

(federal habeas corpus is not vehicle to correct evidentiary rulings); *Boykins v.

Wainwright*, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to

correct erroneous evidentiary rulings in state court except where rulings deny petitioner

fundamental constitutional protections).  However, where the petitioner claims that the state court's evidentiary ruling deprived him of due process, the habeas court asks only whether the error was of such magnitude as to deny the petitioner his right to a fair trial, i.e., whether the error "was material as regards a critical, highly significant factor." *Alderman*, 22F.3d at 1555; *see also Kight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995) (state court evidentiary rulings reviewed only to determine whether error was of such magnitude as to deny petitioner right to fair trial).  In this Court's view, the state court's admission of the medical records did not violate Petitioner's right to due process. Although Petitioner originally objected to their admission on grounds that the State had committed a discovery violation by their seemingly tardy production, it is clear that Petitioner embraced their introduction as being exculpatory of his guilt.  Furthermore, as Petitioner rightly recognized, the real issue was a matter of credibility given the delay in the victim's examination.  Therefore, it is unlikely that the records themselves were of such monumental importance as to even implicate constitutional concerns.  In short, no fundamental miscarriage of justice will result from the Court's failure to consider the claim further as it has no merit.

> 4.      Violation of right to fundamental fairness by admission of
>         J.M.'s medical records.

This claim is part and parcel of the claim in § 3, and for the reasons stated *supra*, even if the claim has been properly exhausted, it is without merit.  The admission of the records was plainly a matter for the state court's determination.  Even if the State did commit a violation of Florida discovery rules, after Petitioner opened the door to the

contents of the records, the state court really had no option but to admit the record.  Thus,

although the court may have considered sanctioning the State by not allowing the records

into evidence, once Petitioner started questioning Ms. Brown about their contents, the

door was wide open to their admission.  *See, e.g., Conroy v. Abraham Chevrolet-Tampa,*

*Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004) ("evidence which normally would be

inadmissible is indeed admissible if the opposing party opens the door to that line of

questioning").

       5.      Grounds raised on post-conviction.

       In a final "catch-all" ground, Petitioner argues that the state court's decision on

his post-conviction motion was contrary to clearly established law.  With regard to the

newly discovered evidence claim, the court held an evidentiary hearing at which the

victim, who was by then 20 years old, testified that her trial testimony was truthful and

that her recantation letter was false.  She explained her reasons for sending the alleged

recantation, and the court considered all of this in reaching its decision.  Petitioner argues

now that the court erred in crediting her testimony and in failing to consider an affidavit

from the individual whom she said coerced her into writing the recantation and complains

that these decisions violated his right to due process.  Though Petitioner contested the

court's ruling in his post-conviction motion, he did not phrase it as a violation of federal

constitutional law, and thus, because it is only technically exhausted, he must show cause

and prejudice for the failure to raise it in state court or a fundamental miscarriage of

justice.  He cannot show either.  A claim of actual innocence based on newly discovered

evidence is not a ground for federal habeas relief in and of itself "absent an independent

constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *see also House v. Bell*, ____ U.S. ____, 126 S.Ct. 2064, 2086-87, 165 L.Ed 2d 1 (2006) (declining to find that freestanding innocence claims are cognizable in habeas corpus proceeding). Thus, the recantation of testimony cannot form the basis for habeas relief. *Brownlee v. Haley*, 306 F.3d 1043, 1064-65 (11th Cir. 2002). The state court was perfectly within its province to determine the credibility of J.M.'s testimony and weigh the evidence presented and to exclude evidence as it saw fit. Therefore, there was no miscarriage of justice warranting further discussion, as the constitutional claim has been defaulted.

With regard to the alleged failures of counsel, the state court's ruling was neither contrary to law nor an unreasonable application of Supreme Court precedent. Petitioner relieved counsel of further obligations of the case based on a conflict of interest, refused representation by anyone else in the public defender's office, and insisted on representing himself. By representing himself, Petitioner relinquished his right thereafter to "complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 822 n.46 (1975). Counsel was relieved of further representation in February, 2001, three months before trial commenced. As the state court found, in that time period, Petitioner had ample time (since he had no other client but himself) to investigate and interview or depose witnesses, to investigate further the matter of the medical records,[9] and to file whatever

---

[9]As noted *supra*, it appears that by the time counsel was relieved of her duties, she had taken the victim's deposition. Petitioner knew that in February and knew that she alluded to a

pretrial and post-trial motions he wanted to file.  He cannot complain that counsel, who

was operating only on a stand-by basis, did not appear for a hearing on one of his pretrial

motions, when she was not primarily responsible for his representation, there being a

clear difference in appointment as "stand-by" counsel and "co-counsel."  She was also

not responsible for making sure that he had a clean record for appellate review.  That

became Petitioner's responsibility when he decided to act as his own counsel.  Petitioner

cannot now fault counsel for things she did or did not do with regard to his case when he

essentially fired her and he had more than sufficient time remaining before trial to

prepare the case.

   Petitioner's claim that the court erred in not adequately inquiring into Petitioner's

invocation of his right to self-representation is flatly belied by record, and thus, the state

court's decision on that issue is entitled to deference.  Furthermore, any violation of state

court rules with regard to a renewal of an offer of counsel is not cognizable on habeas

review.  Furthermore, at the conclusion of trial, the court specifically asked Petitioner if

he wanted "to have a lawyer represent [him] from this state forward."  Doc. 20, Ex. O, at

229-30.  When Petitioner answered affirmatively, the court appointed the public

defender's officer "to take over handling this case from this point forward."  *Id.* at 230.

Petitioner was therefore not counsel in the post-trial proceedings.

---

medical exam.  Though Ms. Smoak represented that there were no medical records to support
that exam, Petitioner, who is obviously bright and articulate, should have questioned that
representation and pressed forward with further investigation.  Certainly, the undersigned does
not suggest that Ms. Smoak was being disingenuous in representing that medical records did not
exist; however, the Court cannot imagine such a situation unless, perhaps, the records had been
destroyed by medical personnel in the regular course of business.

The Court has already dispensed with the *Brady* issue, the ex parte conference with the witness, and the allegation regarding the court's neutrality. Further consideration is not necessary, as they are all without merit, as discussed *supra*.

## CONCLUSION

Having carefully considered the matter, the Court finds that none of Petitioner's claims are well taken, and therefore, it is respectfully **RECOMMENDED** that the petition for writ of habeas corpus, Doc. 1, be **DENIED**, and that this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this  **14th**  day of April, 2008.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**